Robert A. Rosette (admission pending)
Saba Bazzazieh
Nicole St. Germain
Chase Goodnight (admission pending)
ROSETTE, LLP
212 W. Chandler Blvd., Ste. 212
Chandler, AZ 85225
Tel: (480) 889-8990
rosette@rosettelaw.com
sbazzazieh@rosettelaw.com
nstgermain@rosettelaw.com
cgoodnight@rosettelaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Lac Courte Oreilles Financial Services, LLC, Hummingbird Funds, LLC, Miinan Funds, LLC<br><br>*Plaintiffs*,<br><br>v.<br><br>Cane Bay Partners VI, LLLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd, M. Mark High, Ltd., Kirk Chewning, David Johnson, Kim Anderson, Jay Clark, and DOES 1-20,<br><br>*Defendant*. | **Case No.**<br><br>**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

1

## INTRODUCTION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs Lac Courte Oreilles Financial Services, LLC ("LCOFS"), a wholly-owned and operated entity of the Lac Courte Oreille Band of Lake Superior Chippewa Indians ("Tribe"), a federally-recognized tribe, and its wholly-owned subsidiaries, Hummingbird Funds, LLC ("Hummingbird") and Miinan Funds, LLC ("Miinan"), bring this motion against Cane Bay Partners VI, LLLP ("Cane Bay"), its owners, David Johnson and Kirk Chewning, Dimension Credit (Cayman), L.P. ("Dimension Credit"), Cane Bay's affiliate businesses Strategic Link Consulting, LP ("Strategic Link"), Esoteric Ventures, LLC, d/b/a Max Touch Services ("Esoteric"), InfoTel International Ltd., d/b/a Voyse International ("InfoTel"), M. Mark High, Ltd., John Clark, Kim Anderson (collectively, "Defendants"). Injunctive relief is critically needed to cease Defendants' unlawful conduct and to prevent further irreparable harm to the Tribe. Through this motion, Plaintiffs seek that this Court enjoin Defendants from taking action or recourse against any assets and/or property belonging to Plaintiffs and enjoin Defendants from pursuing or attempting to pursue any remedies, relief, or actions under any of the relevant contracts at issue in this litigation. As set forth herein, Plaintiffs meet the standard for injunctive relief pursuant to Fed. R. Civ. P. Rule 65(b), therefore, granting this motion is both necessary and appropriate.

## STATEMENT OF FACTS

LCOFS and its subsidiaries (Hummingbird and Miinan) are tribally-owned economic development arms intended to generate revenue for essential Tribal government services and create desperately needed employment opportunities for tribal members living within the Tribe's Reservation. *See* Declaration of Scott Soli in Support of Motion for Temporary Restraining Order ("Soli Decl.") at ¶¶ 2-5. Defendants, playing on the Tribe's dire need to

2

provide for its people, held themselves out as industry experts willing to consult on the development of, and provide services for, the Tribe's lending venture. Defendant Chewning convinced the Tribe that Cane Bay and all of its affiliate servicing companies (Strategic Link, Esoteric, InfoTel, M. Mark High, Ltd. – the "Servicing Affiliates"), could provide underwriting expertise, full-service operational support, training for tribal employees, and even access to financing.

In 2014, relying on Defendant Chewning's many representations, LCOFS entered into service agreements with Cane Bay, the Servicing Affiliates, and a credit agreement with Dimension Credit. From 2014-2017, the parties operated under the terms of these original 2014 agreements. By mid-2017, the Plaintiffs began trying to renegotiate the arrangement as this original agreement had failed to produce much benefit to the Tribe—in terms of profit, portfolio growth, and economic opportunities.

In November 2018, in reliance on Defendant Chewning's assurances that the new structure would drive economic growth and increase operational control, the Plaintiffs entered new transaction documents. Unfortunately, the new agreements amounted to little practical change as Defendant Chewning, Cane Bay, and the Servicing Affiliates largely maintained the prior profit margin under the prior contractual relationship. *See* Soli Decl. ¶ 6. Specifically, Defendant Chewning, Cane Bay, and the Servicing Affiliates passed impermissible costs of their fixed assets as expenses Hummingbird and Miinan. *Id*. Cane Bay, through Defendant Chewning, also failed to pay accounts payable as they became due, ballooning Plaintiffs' receivables to nearly $10 million as a means to maximize cash available to Cane Bay for distribution. Soli Decl. ¶ 15.

Plaintiffs hired Scott Soli as the Chief Executive Officer of LCOFS in February 2020,

giving him direct oversight and control over Hummingbird and Miinan. Soli Decl. ¶¶ 2, 4. After perceiving irregularities in Plaintiffs' financials, Mr. Soli commenced an internal audit, the results of which uncovered some of the Defendants wrongdoing and general bad faith in performance of the contracted services. *See* Soli Decl. ¶¶ 6-7.

Mr. Soli attempted to work in good faith with Defendant Chewning after his hire to understand the fees, expenses, and interplay between Plaintiffs and Defendants. Soli Decl. ¶¶ 8-9. He also worked to resolve billing issues and transition more significant call center operations on to the Reservation as contemplated in the transaction documents. Soli Decl. ¶ 10. Mr. Soli's efforts are evidenced by the multiple amendments to the Service Level Agreements between Hummingbird, Miinan, and the Servicing Affiliates.

In May 2022, growing frustrated with Mr. Soli's demand for accountability, expense justifications and further development of on-Reservation capabilities, Cane Bay and its Servicing Affiliates had their legal counsel notify Plaintiffs' legal counsel of a dispute and intent to mediate as set forth in the parties' transaction documents related to unpaid and disputed invoices. *See* Soli Decl. ¶ 13. This correspondence failed to mention the parties' informal discussions related to an early buyout of Cane Bay's interests to hasten the parties' breakup and instead made a multi-million dollar demand. Soli Decl. ¶ 12.

Following receipt of Cane Bay's letter, Plaintiffs requested portfolio data and financial statements held and controlled by Strategic Link. Soli Decl. ¶ 14. In response, Strategic Link refused to cooperate and noted that it would not act under the terms of the contracts until all outstanding expenses and invoices were paid. *Id*. Strategic Link then informed Hummingbird and Miinan that M. Mark High had ceased purchasing leads for the portfolios, meaning the Servicing Affiliates would not assist in underwriting or funding any new loans for either

portfolio. *Id*.

On the heels of Cane Bay and the Servicing Affiliates' notice of dispute, Dimension Credit called Plaintiffs' note, alleging payment obligations from an unsigned, never approved loan amendment. Despite Plaintiffs providing an executed copy of Dimension's satisfaction and lien release, Dimension Credit seeks to exercise its right under *some* version of the credit agreement and demands satisfaction of the loan.

The choreographed attack on the Tribe's businesses by manipulating purported contractual remedies and paralyzing operations, is Defendant Chewning's most recent effort at maintaining control and preserving the Defendants' illegal scheme.

In light of these egregious and bad-faith tactics, and facing imminent economic destruction, the issuance of a temporary restraining order is critically necessary to prevent Defendants' ongoing and coordinated efforts to hijack the Tribe's business. The standard for granting such relief is easily met here. Plaintiffs can establish a strong likelihood of success on their underlying claims, as the facts plainly show that the Defendants have unlawfully exploited—and continue to exploit—the Tribe's sovereignty for their own financial gain, in violation of federal and state law. All other prerequisites for injunctive relief are also present here. Irreparable harm exists because absent an injunction, the Plaintiffs' business enterprise is at further risk of sabotage and a corresponding loss of value—attacks the Defendants have already shown a willingness to employ. *See* Soli Decl. ¶¶ 10-11, 14-17.

By contrast, Defendants will suffer no cognizable harm for an injunction that precludes the taking of property which they do not own or are not contractually entitled to. Similarly, it does not serve the public interest to allow individuals to manipulate contractual arrangements or hold hostage business operations until their demands are met.

Accordingly, the Court should grant Plaintiffs' motion and enjoin Defendants from taking action or attempting to exercise remedies against Plaintiffs' property under any purported contract.

## LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must show "(1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Abbott Labs v. Mead Johnson & Co*.., 971 F.2d 6,11 (7th Cir. 1992). If a plaintiff meets these factors, the court proceeds to a "balancing phase, where it must consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021). All of the requirements for injunctive relief are present here.

## ARGUMENT

Injunctive relief is necessary in this case to avoid severe and irreparable damage to Plaintiffs' businesses—and in turn, the Tribe's economy as a whole. As explained below, the request for such remedy falls squarely within the standards established in this Circuit. Accordingly, the Court should grant this motion and enjoin Defendants from taking any measures affecting the financial well-being of the Plaintiffs' businesses, including but not limited to any actions to divert funds away from the business or otherwise purposefully attempting to adversely impact Hummingbird's or Miinan's portfolios.

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS**

Defendants' blatant attempts to hijack and dismantle Plaintiffs' businesses plainly constitute unlawful conduct, as alleged in Plaintiffs' complaint. Plaintiffs' request thus satisfies the first criterion for a temporary restraining order—likelihood of success on the merits.

Although it is well-established that a plaintiff seeking a temporary restraining order must demonstrate some probability of success on the merits, "the threshold is low." *Brunswick Corp. v. Jones, Jr.*, 784 F.2d 271, 275 (7th Circ. 1986). Indeed, the plaintiff's odds of prevailing must simply be "better than negligible." *Id.* Moreover, the moving party need only demonstrate likelihood of prevailing on one claim—not necessarily every cause of action in the complaint. *See, e.g,*, *Jano Justice Sys., Inc. v. Burton*, 2010 WL 2012941, at *10 (C.D. Ill. May 20, 2010).

Here, Plaintiffs have a substantial likelihood of success on the merits of all their claims because the Defendants have committed civil violations of federal statutory law, breached their contractual duties, and engaged in blatant tortious misconduct.

Defendants have clearly violated federal law by both committing theft from a tribal organization under 18 U.S.C. § 1163 and by committing wire fraud and money laundering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. The theft, fraud, and money laundering are evident from the course of conduct. As the Complaint sets forth, Defendants repeatedly embezzled funds from the Tribe's business through the transfer of funds to Dimension Credit under the guise of interest payments not due or owing. Cane Bay and the Servicing Affiliates similarly passed on fixed assets as expenses to Plaintiffs and Defendant Chewning's mismanagement pushed Hummingbird into taking on unnecessary debt from Dimension Credit to pay long past due accounts payable. *See* Complaint ¶¶ 34–39*;* Soli Decl. ¶¶ 6-7, 15. Wire fraud is evident from individual misdealing (e.g., the Dimension Credit matter) as

well as the broader deception associated with their "rent-a-tribe" scheme. Indeed, while Defendants consistently pitched a business relationship wherein the Tribe would have an honest managerial and oversight role, however over time Plaintiffs learned Cane Bay and Defendant Chewning controlled every material facet of Hummingbird and Miinan's businesses until Mr. Soli's hire and audit of the relationship, making Defendants the de facto lender. *See id.* Of course, while Defendants attempted to disguise their role as that of a "servicer," by any objective measure, they in effect were the true lender, as they handled every aspect of the lending process and received nearly all of the proceeds.

On their contractual claims, Plaintiffs have demonstrated a high probability of success as well. Indeed, Defendants have breached their agreements in multiple ways: they mismanaged the cash proceeds through the Dimension Credit facility; they overcharged for their services; they intentionally devalued the business; and they failed to allow Plaintiffs to exercise legitimate control over operations. *See* Complaint ¶¶ 34, 39–43; Soli Decl. ¶¶ 6-7, 10-11, 14-15.

Finally, Plaintiffs' tort claims are also likely to succeed. Defendants have continually and tortiously interfered in Plaintiffs' contractual relationships, including but not limited to the relationship with Dimension Credit. Specifically, Defendants have improperly paid excess interest to Dimension Credit that no valid contract requires *and* have goaded Dimension Credit into calling the note. Soli Decl. ¶ 15. Along the way, Defendants have converted assets rightfully belonging to the Tribe for their own benefit, particularly through improper expense invoices and through refusing to allow Plaintiffs access to its own intellectual property. Soli Decl. ¶¶ 6, 14.

For these reasons, Plaintiffs have demonstrated a substantial likelihood of success on the merits, thus satisfying the first criterion for a temporary restraining order.

## II. PLAINTIFFS WILL BE IRREPARABLY HARMED IF AN INJUNCTION IS NOT GRANTED.

Absent a temporary restraining order preventing Defendants from continuing their wrongful conduct, Plaintiffs will be irreparably harmed. This harm is not only monetary, but also intangible. It stands to cause permanent damage to the Tribal economy, and thus is a strong basis for issuing the relief requested.

Irreparable injury is defined as "harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984). And while monetary damage alone is not universally considered to be irreparable, the impairment of business relations or goodwill may constitute irreparable harm. *YTB Travel Network of Ill., Inc. v. McLaughlin*, 2009 WL 1609020, at *5 (S.D. Ill. June 9, 2009) (citing *Am. Hosp. Supply Corp. v. Hosp. Products, Ltd.*, 780 F.2d 589 (7th Cir. 1986)). Apart from business considerations, moreover, when the risk pertains to a Tribe's exercise of its sovereignty, that injury itself is considered irreparable as a matter of law. *See Wyandotte Nation v. Sebelius*, 337 F. Supp. 2d 1253, 1269 (D. Kan. 2004), *aff'd in relevant part* 443 F.3d 1247 (10th Cir. 2006).

As the Complaint explains, Plaintiffs' business venture has been under attack by the Defendants, and in recent months Defendants' tactics have grown increasingly hostile. *See* Soli Decl. ¶ 14. Although monetary damages may eventually rectify some of the harm caused by some of Defendants' actions, money alone cannot repair the damage caused by the Defendants' intentional sabotage of business operations—such as market share loss and a tainted business reputation. Such injuries threaten not just short-term profits, but the very survival of the business. Soli Decl. ¶¶ 16-17.

Furthermore, even aside from the imminent financial harm, Plaintiffs face the prospect of a severe infringement of tribal sovereignty. Tribal sovereignty, at its core, is the right of a tribe

to govern itself. *See, e.g.*, *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 168 (1982). This necessarily includes important prerogatives such as providing social services to tribal members and developing the tribal economy. *Id.*; *see also Seneca–Cayuga Tribe of Okla. v. Oklahoma*, 874 F.2d 709 (10th Cir. 1989). And of course, damage to a tribal business will impact both of these facets of tribal self-government. Because revenues from Plaintiffs' businesses support social services for Tribal members, damage to the business will put those services at risk. More broadly, to the extent the business is part of a tribal economic plan, damage to the business poses the risk of weakening the Tribe's economy as a whole, including potentially costing numerous Tribal members' jobs. Indeed, in the wake of Strategic Link's actions in recent weeks, Plaintiffs have already had to send home call center employees for being unable to operate as normal without access to Hummingbird and Miinan's intellectual property necessary to run its business. Soli Decl. ¶ 14.

For these reasons, it is clear that a temporary restraining order is necessary to avoid severe and irreparable harm.

### III. DEFENDANTS WILL NOT BE IRREPARABLY HARMED THE RELIEF IS GRANTED.

In contrast to the substantial harm to Plaintiffs, Defendants will suffer no cognizable harm if the requested relief is granted. At the worst, Defendants would claim (and Plaintiffs would dispute) that Plaintiffs owe them some amount of money. And of course, monetary damage alone is not irreparable. *Dos Santos v. Columbus–Cuneo–Cabrini Med. Ctr.*, 684 F.2d 1346, 1349 (7th Cir. 1982). This factor weighs heavily in favor of Plaintiffs.

### IV. THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF AN INJUNCTION.

Finally, Plaintiffs have clearly satisfied the remaining criterion relevant to the analysis: the public interest. Put simply, the public has an interest in ensuring that businesses serving the

public—e.g., a consumer lending business—are operated lawfully, such that they are not thinly veiled "rent-a-tribe" schemes.

The public undeniably has an interest in ensuring that consumer-facing businesses refrain from unlawful business practices. *E.g. Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992). That interest applies here, as Defendants have operated beyond the scope of the parties' contractual agreements to restrict Plaintiffs' access to its own business, unlawfully converted assets, overpaid a creditor to personally benefit the individual tasked with cash management for a business, and endangered the Tribe's exercise of sovereignty. Soli Decl. ¶¶ 6, 10-11, 14-15. Absent a temporary restraining order, there will be nothing preventing either (i) Defendants from wholly taking over Plaintiffs business and its assets or (ii) the demise of Plaintiffs' business because of its inability to operate in the face of Defendants' unlawful tactics.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that this Motion for a Temporary Restraining Order be granted, enjoining Defendants from taking action or recourse against Plaintiffs' property and from pursuing remedies under any purported contract.

Dated: June 22, 2022                           Respectfully Submitted,

                                                       */s/ Nicole St. Germain*
                                          Robert A. Rosette (admission pending)
                                          Nicole St. Germain
                                          Saba Bazzazieh
                                          Chase Goodnight (admission pending)
                                          ROSETTE, LLP
                                          565 W. Chandler Blvd., Ste. 212
                                          Chandler, AZ 85225
                                          Telephone: (480) 889-8990
                                          rosette@rosettelaw.com
                                          nstgermain@rosettelaw.com
                                          sbazzazieh@rosettelaw.com
                                          cgoodnight@rosettelaw.com

## CERTIFICATE OF MAILING

I certify that on the date below, I served a copy of this Motion for Temporary Restraining Order, Declaration of Scott Soli in Support of Motion for Temporary Restraining Order and Proposed Order Granting Temporary Restraining Order to the following parties at their address listed below via overnight FedEx delivery:

Cane Bay Partners VI, LLLP
Jay Clark and Dyca Tricoche
2205 Church Street, Suite 305
Christiansted, USVI 00820

David Johnson
c/o Cane Bay Partners VI, LLLP
2205 Church Street, Suite 305
Christiansted, USVI 00820

Esoteric Ventures, LLC
Attention:  Kim Anderson, Chief Executive Officer
2015 Vaughn Road, Suite 575
Kennesaw, GA 30144

Infotel International, Ltd.
Attention:  Kim Anderson, Chief Executive Officer
2015 Vaughn Road, Suite 575
Kennesaw, GA 30144

Jay Clark
c/o Cane Bay Partners VI, LLLP
2205 Church Street, Suite 305
Christiansted, USVI 00820

Kirk Chewning
c/o Cane Bay Partners VI, LLLP
2205 Church Street, Suite 305
Christiansted, USVI 00820

M. Mark High Ltd.
Attention:  Dean Molina
5570 Princess Margaret Drive
Belize City, Belize

M. Mark High Ltd.
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, U.S. Virgin Island

M. Mark High Ltd.
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, U.S. Virgin Island

Strategic Link Consulting, LP
Attention:  Kim Anderson, Chief Executive Officer
2015 Vaughn Road, Suite 575
Kennesaw, GA 30144

Dimension Credit (Cayman), L.P.
c/o Vector Capital Corporation - Roy Kelvin
One Market Street
Steuart Tower, 23rd Floor
San Francisco, CA 94105

Kim Anderson
2015 Vaughn Road, Suite 575
Kennesaw, GA 30144

Dated:  June 22, 2022                                  Respectfully Submitted,

  */s/ Anthony Jones*
_____
Anthony Jones
Paralegal
ROSETTE, LLP
565 W. Chandler Blvd., Ste. 212
Chandler, AZ 85225
Telephone: (480) 889-8990