Robert A. Rosette
Saba Bazzazieh
Nicole St. Germain
Chase Goodnight
ROSETTE, LLP
212 W. Chandler Blvd., Ste. 212
Chandler, AZ 85225
Tel: (480) 889-8990
rosette@rosettelaw.com
sbazzazieh@rosettelaw.com
nstgermain@rosettelaw.com
cgoodnight@rosettelaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Lac Courte Oreilles Financial Services, LLC, Hummingbird Funds, LLC, Miinan Funds, LLC<br><br>*Plaintiffs*,<br><br>v.<br><br>Cane Bay Partners VI, LLLP, Dimension Credit, L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd, M. Mark High, Ltd., Kirk Chewning, David Johnson, Kim Anderson, Jay Clark, John Clark, and DOES 1-20,<br><br>*Defendants*. | Case No.:<br><br>**DECLARATION OF SCOTT SOLI IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |

I, Scott Soli, hereby declare as follows:

1. I am over the age of eighteen, am competent and of sound mind, and have personal knowledge of the facts set forth below and, if called on to do so, I could competently testify to those facts.

2. In February 2020, I was hired as the Chief Executive Officer of Lac Courte Oreilles

DECLARATION OF SCOTT SOLI

1

Financial Services, LLC ("LCOFS"), a wholly-owned limited liability company of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians (the "Tribe"), a federally-recognized Indian tribe located in rural Wisconsin.

3. LCOFS has two wholly-owned subsidiaries Hummingbird Funds, LLC ("Hummingbird"), and Miinan Funds, LLC ("Miinan"), which offer small dollar consumer loans over the internet.

4. As Chief Executive Officer of LCOFS, I have direct oversight authority of Hummingbird and Miinan.

5. The Tribe relies greatly on the funds generated by Hummingbird and Miinan to fund Tribal government operations and essential Tribal government services for the benefit of the Tribe's enrolled members.

6. Shortly after assuming my current position, I launched an internal audit of LCOFS, Hummingbird, and Miinan to assess business operations and determine the Tribe's involvement in the business and compliance with the transaction documents. I noted that the on-Reservation call center's role was limited to working customer accounts over 180 days past due, which are notoriously difficult to collect. I sought to understand why the Tribe's profit distribution remained low, despite the recent business restructure. The audit uncovered that Cane Bay Partners VI, LLLP ("Cane Bay") and its affiliate servicing companies (Strategic Link Consulting, Esoteric, InfoTel, M. Mark High, Ltd. – the "Servicing Affiliates"), had, among other things, improperly expensed certain fixed assets and failed to provide adequate training and development of the on-Reservation call center.

7. Based upon this audit, it became evident to be that Cane Bay had deliberately neglected proper oversight over the Tribe's business accounts in order to maximize their cut of profits.

8. I then informed Cane Bay co-owner Kirk Chewning of the audit's findings in an attempt to resolve these issues. Mr. Chewning reacted first by admitting some improper expensing, but ultimately with hostility and a refusal to work cooperatively.

9. At first, Mr. Chewning ignored my communications and then began offering general

denials. Eventually, Mr. Chewning admitted to billing errors on the part of Cane Bay and its Servicing Affiliates.

10. In these communications (between Mr. Chewing and myself), I also inquired about Strategic Link's failure to provide adequate training and develop the on-Reservation call center. Mr. Chewning blamed this failure on Tribal members and their inability to meet servicing standards Chewning set as a baseline before he had to transition jobs permanently on-Reservation

11. I now know Mr. Chewning's claims to be materially false, as LCOFS' on-Reservation call center efficiently and profitably services the Tribe's portfolios and has generated millions in collections without the Servicing Affiliates' assistance. I believe that Mr. Chewning intentionally caused the trainings to fail to prevent Plaintiffs from taking over components of the business. As I continued to identify and dispute these fraudulent charges, Mr. Chewning's bad faith actions worsened. He continued refusing to provide financial statements, expense justifications, or other accounting details for disputed charges.

12. In April 2022, after being unable to resolve the outstanding billing disputes with Mr. Chewning, I requested he make LCOFS an offer to buy Defendants out of the contracts and end the relationship. In response, Mr. Chewning agreed to put together a buy-out proposal.

13. Instead of negotiating a buy-out, , Cane Bay and its Servicing Affiliates sent a notice of a formal dispute and an intent to mediate.

14. After LCOFS received this notice, I instructed LCOFS employees to gather portfolio data held by Strategic Link Consulting. To date, Strategic Link has refused to provide the requested material on the basis of unpaid invoices and has informed Hummingbird and Miinan that it is no longer processing new leads for the portfolio, which means neither portfolio has issued a new loan since May 2022. This, in turn, means that the on-Reservation call center employees have much less to do. We have had to send workers home as a result of Strategic Link's inaction. Additionally, Cane Bay and its Servicing Affiliates have stopped providing underwriting services. Defendants are well aware of the damage this inaction will cause to the portfolios in the short and long term.

15. On a number of occasions, Mr. Chewning made representations implying he had an ownership interest in and control over Dimension Credit. He represented differently after he failed to arrange payment for vendor payables due from Hummingbird and Miinan. When these deferred accounts payable ballooned to nearly $10 million, Mr. Chewning told LCOFS that it had to draw down additional credit from Dimension Credit to pay for his mismanagement. When Plaintiffs and Dimension Credit were unable to come to terms on an extension of the facility, Mr. Chewning told me he no longer held an interest in Dimension Credit, and it was now held by billionaires. However, between 2016 and early 2022, when I believe Mr. Chewning had an ownership interest in Dimension Credit, he personally arranged for the overpayment of interest payments to Dimension at 20% instead of the 15% required by the executed loan agreements.

16. The ongoing actions of Mr. Chewning, Cane Bay, and its Servicing Affiliates have caused real and significant damage to the business operations of the Hummingbird and Miinan.

17. If these actions persist, LCOFS will either be required to shut down Hummingbird or Miinan, or they will both simply die for failure to maintain operations. This loss will greatly impact LCOFS's ability to make Tribal distributions that fund essential Tribal government services for its members.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of June, 2022, in Hayward, Wisconsin.

*Scott Soli*

Scott Soli