### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Lac Courte Oreilles Financial Services, LLC, Hummingbird Funds, LLC, Miinan Funds, LLC, <br><br>     Plaintiffs, <br><br> v. <br><br> Cane Bay Partners VI, LLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., M. Mark High, Ltd., Kirk Chewning, David Johnson, Kim Anderson, Jay Clark, and DOES 1-20, <br><br>     Defendants. | Case No. 3:22-cv-00344-jdp <br><br><br> **MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS** |

 Defendants (1) Cane Bay Partners VI, LLP ("**Cane Bay**"); (2) Strategic Link Consulting, LP ("**Strategic Link**"); (3) Esoteric Ventures, LLC ("**Esoteric**"); (4) InfoTel International Ltd. ("**InfoTel**"); (5) M. Mark High, Ltd. ("**M. Mark High**"); (6) Kirk Chewning; (7) David Johnson; (8) Kim Anderson; and (9) Jay Clark (collectively "**Cane Bay Defendants**")[1] respectfully submit this Memorandum in Support of their Motion to Compel Arbitration and to Dismiss**.**

 This is a straightforward contract dispute and is subject to binding arbitration.  9 U.S.C. § 1-15.  In their Complaint, (Dkt. 1), and the "facts" that they use to support their Motion for Temporary Restraining Order ("**TRO Motion**"), (Dkt. 2), Plaintiffs freely admit that they entered into binding contracts with the Cane Bay Defendants, that these contracts include dispute resolution provisions, that the matters alleged in the Complaint are subject to those dispute resolution provisions, and that several of the moving Defendants have already initiated arbitration

---

[1] The remaining Defendant Dimension Credit (Cayman), L.P. has filed its own motion to compel arbitration and stay all proceedings. (Dkt. 19)

pursuant to those provisions.  (TRO Mot. at 14)  Plaintiffs are attempting to turn garden-variety alleged breaches of contract into alleged Racketeer Influenced and Corrupt Organizations ("RICO") claims to avoid arbitration, a familiar maneuver that has been repeatedly rejected by both the Seventh Circuit and the United States Supreme Court.  *See Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987), *Hodge Bros., Inc. v. DeLong Co.*, 942 F. Supp. 412, 417 (W.D. Wis. 1996).

## FACTUAL BACKGROUND

I.   **The Agreements Include Broad, Clear Dispute Resolution Clauses Calling For Binding Arbitration.**

Plaintiffs Hummingbird Funds, LLC and Miinan Funds, LLC (the "**Loan Portfolios**") have entered into contractual relationships (the "**Agreements**") with Cane Bay, Esoteric, InfoTel, Strategic Link, and M. Mark High (the "**Service Providers**").  The Individual Defendants are all officers or employees of the Service Providers, and Plaintiff Lac Courte Oreilles Financial Services, LLC is the parent corporation the Loan Portfolios.  (Comp., Dkt 1, at ¶¶ 6-8, 15-16)[2]

The Agreements all require binding arbitration, and that arbitration has already commenced.  The Service Providers filed Arbitration Demands and Complaints with the American Arbitration Association ("**AAA**") on June 16, 2022, six days before this action was filed. (Declaration of Tiffany A. Blofield ("Blofield Decl."), at ¶ 7)  Plaintiffs have not responded to these Arbitration Demands.  They also failed to return calls from the AAA case administrator regarding case management.

The Agreements between the Service Providers and Hummingbird are the: (1) Service Level Agreement by and between Esoteric and Hummingbird dated November 1, 2018 and

---

[2] Mr. Kim Anderson's employment with Cane Bay ended on April 4, 2020, and tenure on the board ended on March 26, 2021.

amended August 1, 2020; (2) Service Level Agreement by and between InfoTel and Hummingbird dated November 1, 2018 and amended August 1, 2020; (3) Services Agreement between M Mark High and Hummingbird, dated November 1, 2018 and amended April 12, 2021; (4) Services Agreement by and between Esoteric and Hummingbird dated November 1, 2018 and amended April 12, 2021; (5) Services Agreement by and between InfoTel and Hummingbird dated November 1, 2018 and amended April 12, 2021; (6) Services Agreement between Strategic Link and Hummingbird dated November 1, 2018 and amended April 12, 2021; and (7) Services Agreement between Cane Bay and Hummingbird dated November 1, 2018 and amended April 1, 2020, August 1, 2020 and April 12, 2021 ("**Cane Bay/Hummingbird Service Agreement**").[3]

The Agreements between the Service Providers and Miinan are the: (1) Service Level Agreement by and between Esoteric and Miinan, dated November 1, 2018 and amended August 1, 2020; (2) Service Level Agreement by and between InfoTel and Miinan, dated November 1, 2018 and amended August 1, 2020; (3) Services Agreement between M Mark High and Miinan, dated November 1, 2018 and amended April 12, 2021; (4) Services Agreement by and between Esoteric and Miinan dated November 1, 2018 and amended April 12, 2021; (5) Services Agreement by and between InfoTel and Miinan dated November 1, 2018 and amended April 12, 2021; (6) Services Agreement between Strategic Link and Miinan dated November 1, 2018 and amended April 12, 2021; and (7) Services Agreement between Cane Bay and Miinan dated November 1, 2018 and amended April 1, 2020 and April 12, 2021 ("**Cane Bay/Miinan Service Agreement**").

---

[3] The Cane Bay Defendants did not file the Service Agreements or the Service Level Agreements with the Court, because of confidential pricing and other information. (Blofield Decl. at ¶ 6) However, if the Court determines that the entire Service Agreements and Service Level Agreements would be helpful for the motion to compel arbitration and dismiss, we will redact the Service Agreements and Service Level Agreements and file a motion to seal with the Court. (*Id.*) The language quoted herein is a true and correct representation of the contents of the Agreements. (*See id.* at ¶¶ 3-5)

The Agreements titled "Service Agreements" (the **Service Agreements**") all have identical dispute resolution language, stating that "[a]ll disputes, controversies or claims between the Parties connected to this Agreement shall be resolved by binding arbitration conducted in accordance with the provisions of this Section ("Arbitration Proceedings") and per the Company's Limited Waiver of Sovereign Immunity contained in Section [13 or 15] above."  (Blofield Decl. at ¶ 4 discussing Service Agts. at § §14(a)(i) or 16(a)(i))  "That includes without limitation any dispute, controversy or claim between the Parties regarding the rights, duties, adequacy of performance, breach, or liabilities of a Party under any provision of this Agreement or the validity or enforceability of this Agreement."  (*Id*. at § § 14(a)(ii) & 16(a)(ii)).  This arbitration is to be conducted by the AAA in accordance with the Commercial Rules.  (*Id*. at § 16(f)(iv)(B))  This provision is found in Section 14 of some Service Agreements and Section 16 of others.

In addition, the Agreements titled "Service Level Agreements" have virtually identical dispute-resolution language, appearing in Section 9 of the contracts . . ."  (Blofield Decl. ¶ 5; Service Level Agts. § 9)  These Service Agreements provide that "[i]f any dispute arises under this Agreement, such dispute shall be resolved according to Section 14 of the Services Agreement, which is incorporated into this Agreement as if a part hereof."  (*Id.*)  Accordingly, all of the agreements are subject to arbitration.

## II.   Plaintiffs allegations are fundamentally contractual in nature and fall within this broad dispute resolution language.

Plaintiffs' allegations relate to alleged conduct in connection with the parties' rights and obligations under the Service Agreements.  Those allegations clearly demonstrate that this is a contract dispute pretending to be a RICO claim.  This is particularly clear from the alleged Fact Statement included in the TRO Motion, in which Plaintiffs ask the court to enjoin the Defendant "from pursuing remedies under any purported contract."  That presumably includes the arbitrations

pending before the AAA.

The Plaintiffs' TRO Motion opens by alleging that "relying on Defendant Chewning's many representations, LCOFS entered into service agreements with Cane Bay, the Servicing Affiliates, and a credit agreement with Dimension Credit."  (TRO Mot. at 3, Dkt. 2) "From 2014-2017, the parties operated under the terms of these original 2014 agreements," after which they "began trying to renegotiate the arrangement as this original agreement had failed to produce much benefit to the Tribe." (*Id.*) "Unfortunately, the new agreements amounted to little practical change as Defendant Chewning, Cane Bay, and the Servicing Affiliates largely maintained the prior profit margin under the prior contractual relationship." (*Id*.)

 It is telling that Plaintiffs define success as reducing the profitability of the companies with which they do business.  They also complain the Service Providers passed on "impermissible costs" and "failed to pay accounts payable as they became due." (*Id.*)  Those are quintessential breach of contract claims.

Finally, "growing frustrated with Mr. Soli's demand for accountability, expense justifications and further development of on-Reservation capabilities," (or the millions of dollars he had accumulated in overdue invoices) "Cane Bay and its Servicing Affiliates had their legal counsel notify Plaintiffs' legal counsel of a dispute and intent to mediate ***as set forth in the parties' transaction documents***."  *Id*. at 14 (emphasis added).[4]  Dimension Credit – who filed its own motion – is also alleged to have called its loan in a manner that may or may not have been consistent with its own contractual obligations, *id*., in what was allegedly a nefarious scheme by a major creditor to stop its debtors from allowing unpaid bills to pile up and defaulting on their key

---

[4] This Notice of Dispute, which is also characterized in paragraph 49 of the Complaint, was clearly labeled  a "Rule 408 Settlement Communication."  It was sent on the clear understanding that its contents would remain confidential and privileged, and Defendants do not waive any rights or privileges associated with it.

business contracts.  (*See* Comp. ¶ 51)

All of these imagined wrongs relate to actions and conduct addressed in, and governed by, the Service Agreements.  Either the Defendants acted within their rights or they did not.  In either event, there is nothing alleged that suggests anything more than an arbitrable contract dispute, one that will also address Plaintiffs' unpaid obligations to Defendants.  (*See* TRO Motion at 2-6.)  In fact, this five-page outpouring of buyers' remorse barely rises to a cognizable claim for breach of contract.  Plaintiffs appear to be under the impression that, if an agreement does not produce the long-term economic benefits they hoped for, (*id*. at 2), they can disregard their obligations and ignore the Service Agreements' dispute resolution provisions.

## ARGUMENT

"The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)(quoting 9 U.S.C. § 2).  "The Arbitration Act thus establishes a federal policy favoring arbitration, requiring that we rigorously enforce agreements to arbitrate."  *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)(quotations omitted).  "Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that 'would provide grounds 'for the revocation of any contract''… 'provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability.'"  *Id*. (quotation omitted).

## I.      PLAINTIFFS' CLAIMS ARE SUBJECT TO BINDING ARBITRATION.

It is beyond any genuine dispute that the Service Agreements' arbitration clauses are valid and enforceable.  By their plain, unambiguous language, the arbitration clauses mandate "[a]ll

disputes, controversies or claims between the Parties connected to this Agreement shall be resolved by binding arbitration conducted in accordance with the provisions of this Section."  (Blofield Decl., at ¶ 4; Service Agts. at § § 14(a)(i) or 16(a)(i)).  This arbitration is to be conducted in accordance with the Commercial Rules of the American Arbitration Association.  (*Id.* at ¶ 4; Service Agts. at § § 14(f) or 16(f))

Those rules (the "Commercial Arbitration Rules") are currently set forth at the following website: CommercialRules_Web-Final.pdf (adr.org) and provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Commercial Rules at R-7(a).  The fact that the parties incorporated the AAA rules by direct reference evidences their agreement that the Arbitrator(s)—***not*** this Court—would decide the issue of arbitrability. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 459 (N.D. Ill. 2021) (finding that "incorporating the AAA rules or similar rules [into an arbitration agreement] clearly and unmistakably delegates arbitrability to the arbitrator" and granting the defendant's Motion to Compel Arbitration).

The arbitration clause of the Service Agreements is drafted broadly, and the conduct alleged by Plaintiff falls within its scope because it relates to rights and obligations under the Service Agreements. Alleging such conduct somehow also violates RICO does not alter or diminish the obligation to arbitrate, since  "[c]laims under federal statutes are no exception*." Smith v. Bd. of Dirs. of Triad Mfg*., 13 F.4th 613, 620 (7th Cir. 2021).  Plaintiffs cannot evade their obligation to arbitrate by attempting to frame their contract dispute as a claim under the RICO Act. "[T]here is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act." *Shearson/Am. Express Inc,*

482 U.S. at 238.  And courts are well aware that RICO claims are subject to abuse and seldom brought against real organized crime organizations.  *Id.* at 242.

A "RICO claim is arbitrable under the terms of the Arbitration Act."  *Id.*  "Arbitration of statutory issues today is routine, even when substantive rights are not subject to waiver."  *Stawski Distrib. v. Browary Zywiec S.A*, 349 F.3d 1023, 1025 (7th Cir. 2003).  This is true even if the conduct at issue is alleged to be criminal.  *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 513 (7th Cir. 2003).

Similarly, a dispute about the fundamental legality of the underlying contract is arbitrable.  *Harter v. Iowa Grain Co.*, 220 F.3d 544, 550 (7th Cir. 2000).  Absent allegations that "the arbitration provisions themselves were the product of fraud, inadequate consideration or the like," disputes regarding "the legality of each contract as a whole" are subject to binding arbitration.  *Id.* Allegations that the Service Agreements are an "illegal rent-a-tribe scheme" are subject to binding arbitration for the same reasons that allegations that contracts illegally restrain trade are subject to arbitration.  *See Prima Paint Corp. v. Flood Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967).  This applies even if there are allegations that the "underlying contracts … call for the commission of criminal acts."  *Hodge Bros., Inc. v. DeLong Co.*, 942 F. Supp. 412, 417 (W.D. Wis. 1996).

Plaintiffs' explanation for why these contracts are illegal is legally incoherent as well as factually incorrect.  They claim that these Service Agreements form an "illegal rent-a-tribe scheme," but this is simply an invented phrase to argue that businesses formed by a tribe under tribal law that rely heavily on outside expertise and capital should not be permitted to assert tribal sovereign immunity.[5]

---

[5] The Sovereign immunity of Plaintiffs is irrelevant for the purposes of the present litigation, because it is the Plaintiff Tribal entities that brought suit as Plaintiffs, waiving their sovereign immunity. *See In re Platter*, 140 F.3d 676, 680 (7th Cir. 1998)(holding that immune parties waive this immunity by voluntarily filing in federal court).  In addition, the Service Agreements include

Plaintiffs are claiming that they have forfeited their sovereign immunity altogether by relying too heavily on the Service Providers in the day to day operation of the business, transforming them into "illegal rent-a-tribe schemes." This is the first time we have heard a tribal business use this pejorative term to describe itself, and even if it were accurate – and it is not – it would not serve to void any contract or agreement to arbitrate. Sovereign immunity deals with the availability of a legal remedy in court, not the validity of underlying contracts, and if the Plaintiffs' businesses really are a "rent-a-tribe scheme," the only legal effect of this would be to expose them to suit by third parties. There is no principle of law that prohibits tribes or service providers from creating businesses that do not satisfy these requirements. *See, e.g., Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir. 2000); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177-85 (4th Cir. 2019); *Memphis Biofuels, LLC v. Chickasaw Nation Indus.*, 585 F.3d 917, 920–21 (6th Cir. 2009); *Hagen v. Sisseton–Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006); *Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.*, 546 F.3d 1288, 1292 (10th Cir. 2008); *Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099, 1107-08 (Colo. 2010); *People v. Miami Nation Enters.*, 386 P.3d 357, 373-76 (Cal. 2016).

The Loan Portfolios operate as valid arms of the Tribe. But, even if a court were to find that they do not, the only legal consequence would be that those business do not have sovereign immunity and are exposed to suit by third parties. *See id*.

## II.   CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MAY ALSO BE ARBITRATED.

The claims against the individual defendants are also subject to binding arbitration. It is

---

a valid and enforceable waiver of sovereign immunity in favor of the Service Providers. (Blofield Decl. ¶ 4;  Service Agts. at § 14 or 16);

well-established that a party cannot evade its obligation to arbitrate by naming individual employees and former employees as defendants when "wrongful acts relate to the non-signatory defendants' behavior as officers and directors or in their capacities as agents of the" signatory business. *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1282 (6th Cir. 1990)(collecting cases). This principle applies to RICO claims against officers and employees, with allegations "arising from the individual defendants' participation as racketeering defendants in the affairs of the corporate Defendant." *Hodge Bros., Inc.,* 942 F. Supp. at 419 (quotation omitted).

## III.   THIS COURT IS THE PROPER VENUE TO COMPEL ARBITRATION.

Plaintiffs have selected this forum for their dispute by filing suit in this Court. Furthermore, in the Section titled "Waiver of Sovereign Immunity" the Service Agreements state:

> Subject to this Section [13 or 15], pursuant to its waiver, the Tribe, on behalf of Company, Company's immunity from suit and ***consents to arbitration and all other actions to enforce this Agreement*** as provided in this Agreement and/or to be sued ***in any of the following courts***, subject to the dispute resolution provisions of Section 16 herein, and ***for the purpose of compelling arbitration*** or enforcing a Final Decision (in either instance, a 'Judicial Proceeding') … ***the United States District Court for the Western District of Wisconsin***.

(Blofield Decl. at ¶ 3; Service Agts. at § 13(c) or 15(c) (emphasis added)).

Normally, because the arbitration provision calls for arbitration in Minneapolis, Minnesota, *id*. at  § 16(f)(vii), the appropriate court to compel arbitration would be the District of Minnesota. *Merrill Lynch, Pierce, Fenner Smith v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Venue, however, "is primarily a matter of convenience of litigants and witnesses[,] [and] [a]s a result, an objection to venue can be waived or forfeited." *Auto. Mechanics v. Vanguard Car*, 502 F.3d 740, 746 (7th Cir. 2007)(quotations and citations omitted).

Plaintiffs have unambiguously and expressly consented to the authority of this Court to compel arbitration. There is no question of forum shopping, these are the forums chosen by the

parties in their contracts and have a close and reasonable relationship to the dispute at hand. The Tribe's Reservation is located within the Western District of Wisconsin, and Minneapolis is the nearest major metropolitan area.

Cane Bay Defendants are also willing to waive their right to have the arbitration conducted in Minneapolis. In other words, the Cane Bay Defendants consent to the arbitration being conducted in any reasonable location selected by the Plaintiffs, including Madison, Wisconsin. The location where the arbitration takes place will ultimately be determined by the arbitrator. *INTL FCStone Fin. v. Jacobson*, 19-cv-01438, 2021 WL 4477917 at \*7 (N.D. Ill. Sep. 30, 2021).

## IV.    THIS COURT SHOULD DISMISS WITHOUT PREJUDICE.

Pursuant to Fed. R. Civ. P. 12(b)(3), this Court can dismiss the Cane Bay Defendants on the grounds of improper venue. Although the Federal Arbitration Act speaks of a stay and not dismissal, a number of Circuits have found that there is "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Villalobos v. EZCorp., Inc*., 12-cv-852-slc, 2013 U.S. Dist. LEXIS 97998, \*23-25 (W.D. Wisc. July 12, 2013)(Mag. J. Crocker) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)); *see also Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 473 (1st Cir. 2011); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009); *Poteat v. Rich Prods. Corp.*, 91 F. App'x 832, 835 (4th Cir. 2004); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999)).

In *Villalobos,* this Court acknowledged that the Seventh Circuit has not ruled specifically on the issue of dismissing an action rather than staying the action. *Id.* at \*24. "The United States District Court for the Northern District of Illinois has adopted the practice of dismissing cases under this exception. *Chambers v. Aviva Life & Annuity Co.*, 2013 U.S. Dist. LEXIS 47246, 2013

WL 1345455, *4-5 (N.D. Ill. 2013) (citing cases).  As noted in *Chambers*, "the Seventh Circuit has repeatedly affirmed district courts' decisions to dismiss suits where all claims are arbitrable." *Id.* (citations omitted).    This Court "f[ou]nd the reasoning articulated in *Chambers* and the circuit court cases cited above persuasive." *Id.*   "Based on this reasoning, I find that this case should be dismissed and not stayed because the entirety of the dispute between the parties is arbitrable." *Id.*

The Eastern District of Wisconsin adopted the same reasoning and cited *Villalobos v. EZCorp., Inc.*, 12-cv-852-slc, 2013 U.S. Dist. LEXIS 97998, *23 approvingly.   *Zagorski v. Pennant Grp., Inc*., Case No. 21-CV-1059, 2021 U.S. Dist. EXIS 230627, *22-23 (E.D. Wisc. Dec. 2, 2021).  "[A] number of circuits (including the First, Fourth, Fifth, Sixth, and Eighth Circuits), have found that there is "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration," (collecting cases). *Id.* at *22.  Finding that the entire dispute here will be resolved through arbitration, the court dismissed the case.

Because this is a contractual dispute between Plaintiffs and the Cane Bay Defendants and all claims related thereto are subject to arbitration, this Court too should dismiss the Cane Bay Defendants from this case without prejudice.

Because the parties' obligation to arbitrate this dispute is clear, and in the interests of judicial economy, the Cane Bay Defendants have confined this Motion to the issue of arbitration, and have not addressed the merits, or lack of merit, of the Complaint.  If the Motion to Compel Arbitration is denied, the Cane Bay Defendants respectfully request leave to file a subsequent Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), to address the many

deficiencies in the Complaint.

## CONCLUSION

For the foregoing reasons, the Cane Bay Defendants respectfully request that this Court:

    a. Issue an order compelling Plaintiffs to participate in the arbitrations that have been filed with the AAA and assigned case numbers 01-22-0002-5888, 5893, 5896, 5906, 5904; and

    b. Dismiss the Cane Bay Defendants from this action pursuant to Rule 12(b)(3), in favor of the arbitral forum selected by the parties.

Dated: June 28, 2022

By:    *s/ Tiffany A. Blofield*
           Tiffany A. Blofield (0237279)
           William Michael, Jr. (admitted *pro hac vice*)
           GREENBERG TRAURIG
           90 South 7th Street, Suite 3500
           Minneapolis, Minnesota 55402
           Phone: (612) 259-9700
           Fax: (612) 677-3101
           blofieldt@gtlaw.com
           michaelw@gtlaw.com

           Gregory W. Kehoe (admitted *pro hac vice*)
           GREENBERG TRAURIG
           101 East Kennedy Boulevard, Suite 1900
           Tampa, Florida 33602
           Phone: (813) 318-5732
           kehoeg@gtlaw.com

           Paul T. Fox (1012431)
           GREENBERG TRAURIG
           77 W. Wacker Drive, Suite 3100
           Chicago, IL 60601
           Phone: (312) 456-8420
           foxp@gtlaw.com

Troy A. Eid (admitted *pro hac vice*)
GREENBERG TRAURIG
1144 15th Street, Suite 3300
Denver, CO 80202
Phone: (303) 572-6521
eidt@gtlaw.com

Attorneys for Defendants Cane Bay Partners VI,
LLP, Strategic Link Consulting, LP, Esoteric
Ventures, LLC, InfoTel International Ltd., M. Mark
High, Ltd., Kirk Chewning, David Johnson, Kim
Anderson, and Jay Clark

*ACTIVE 65801266v2*